**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ALEX WINKLER,

                              CASE NO. 04-72024
    Plaintiff,           HON. LAWRENCE P. ZATKOFF

vs.

ASMAR & SONS, INC., a/k/a and
d/b/a VINEYARDS, VINEYARDS, INC.,
and THE VINEYARDS WINE CELLAR,

    Defendants.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on September 7, 2005

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on Plaintiff's Motion to Reinstate Case for Entry of Judgment for Violation of the Stipulated Order of Permanent Injunction Dated July 21, 2004.  Defendants have responded, Plaintiff has replied to the response, and Defendants have filed a Sur Response with the Court's permission.  The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted.  For the reasons set forth below, Plaintiff's Motion to Reinstate Case for Entry of Judgment is GRANTED IN PART.

## II. BACKGROUND

On October 1, 1996 Ronald Forman granted Plaintiff written permission to use the "Bread Basket" trademark. On August 27, 2003 Forman granted Defendants a non-exclusive license to use the trademark "Bread Basket," pursuant to a written contract. Defendants purchased interior and exterior signs, napkins, menus, wrappers, and customer reward applications displaying the trademark. Fees for the trademark were $500 per month for the first three months, $750 per month for the next four months, and $1,000 per month for the following seven months. After that the fee would increase by 10% each year. The contract could be cancelled with thirty days notice by either party. Upon termination, Defendants were required to remove the trademark from all signs and menus as soon as practicable, and to refrain from using the trademark in future advertising.

After Forman granted Defendants the non-exclusive license, Forman and Plaintiff became involved in litigation regarding the October 1996 agreement. As part of the resolution of the lawsuit Plaintiff acquired all of Forman's rights in the "Bread Basket" trademark. Defendants were then notified that their non-exclusive license was terminated on March 25, 2004. Defendants took some steps to eliminate use of the trademark, but informed Plaintiff that it would take six months to replace the exterior sign and exhaust current supplies of menus and wraps. This was unacceptable to Plaintiff, who filed suit for a preliminary injunction on May 28, 2004 in this Court. The Court granted the preliminary injunction on June 18, 2004.

On July 19, 2004 the parties stipulated to the entry of a permanent injunction. The injunction, which incorporated a settlement agreement between the parties, permanently enjoined Defendants from using the name "Bread Basket" or any confusingly similar trademarks. The injunction contained a liquidated damages clause providing Defendants would pay $50,000 for each

violation of the injunction. The settlement agreement contained a clause providing that Plaintiff must given written notice and an opportunity to cure for the first violation of the injunction. The Court retained jurisdiction to enforce the terms of the injunction.

Plaintiff claims Defendants have committed four violations of the injunction. The first concerns an advertisement. On January 20, 2005 an ad for Defendants using the name "Bread Basket" appeared in the Jewish News. Defendants have submitted an affidavit from the Jewish News stating that the ad was run without specific approval from Defendants, and was a copy of an ad run the previous year. Upon seeing the ad, Defendants notified the Jewish News, which ran a corrected version of the ad on January 27, 2005. On February 3, 2005 Plaintiff notified Defendants of the ad.

The second violation concerns a personal rewards brochure distributed by Defendants. Defendants claim all brochures in their possession had the trademark "Bread Basket" crossed out or covered with a sticker, but Plaintiff has submitted a brochure, allegedly obtained from Defendants' store on February 8, 2005, which does not have the trademark "Bread Basket" crossed out or covered up.

The third violation concerns a menu distributed by Defendants. As with the personal rewards brochure, Defendants claim all menus in their possession had the trademark covered up. Plaintiff has submitted a menu, allegedly obtained from Defendants' store on February 8, 2005, which does not have the trademark covered up.

The fourth violation concerns a publication called The Delivery Butler's Restaurant Delivery Menu Guide, which distributes menus from various restaurants and food providers. The Plaintiff has submitted a Menu Guide, allegedly received on February 12, 2005, which contains a menu from

Defendants using the "Bread Basket" trademark. Defendants have submitted an affidavit from the president of the Delivery Butler stating that in the summer of 2004 Defendants contacted him and requested that all references to "Bread Basket" in Defendants' menu be removed, and offered to provide stickers to cover up existing references.

### III. LEGAL STANDARD

In an action for civil contempt, the plaintiff must prove by clear and convincing evidence that the defendant knowingly violated a specific order of the court. *Rolex Watch U.S.A., Inc. V. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996). When determining an appropriate sanction, the court should consider "the harm caused by noncompliance, 'and the probable effectiveness of any suggested sanction in bringing about the result desired.'" *Glover v. Johnson* 199 F.3d 310, 312 (6th Cir. 1999) (quoting *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947)).

### IV. ANALYSIS

Defendants first argue that they have not violated the permanent injunction. Regarding the advertisement in the Jewish News, Defendants argue that they did not authorize the infringing ad, and upon learning of the ad corrected it. The Court finds this argument persuasive. Plaintiff argues that the ad was done for Defendants' benefit and violated the injunction. The Jewish News could potentially be liable for violating the injunction, if it received notice of the injunction and ran the ad notwithstanding. However, the liability of the Jewish News is irrelevant to the action at hand. The injunction states that liquidated damages are payable upon "a violation of this Order by Defendants." Plaintiff has not challenged Defendants' claim that the advertisement was run without their specific approval. The Court also finds it significant that Defendants corrected the ad before receiving notice from Plaintiff. Defendants were arguably negligent for failing to ensure beforehand

that the ad was in compliance with the injunction. However, the Court finds that an infraction of that sort should be deemed de minimus and not considered a violation of the injunction. *See Slazengers Limited v. Stoller*, 1989 U.S. Dist. LEXIS 9035 (N.D. Ill. 1989) (Defendant's action was accidental and unintentional, and thus did not constitute a violation of the injunction, but defendant could be liable if similar acts occurred again in the future.).

Likewise, the Court finds Defendants are not liable for the menu listed in the Delivery Butler. Defendants have submitted an affidavit from the president of the Delivery Butler stating Defendants requested that all references to "Bread Basket" in their menu be removed. If the Delivery Butler is continuing to use the name "Bread Basket" after receiving notice of the injunction it may be liable for violating the injunction, but that violation cannot be imputed to Defendants, as discussed above.

The Court finds Defendants are liable for violating the injunction with regards to the in-store menu and the personal rewards brochure. The Court accepts Defendants' claim that the vast majority of menus and brochures have had the trademark "Bread Basket" crossed out or covered up. However, by using even one menu or brochure with the trademark, Defendants have violated the injunction.[1]

Defendants argue that even if the injunction was violated, they were not given proper notice, and the liquidated damages clause is unreasonable. The notice provision in the settlement agreement reads as follows:

> For the first action by [Defendants] that [Plaintiff] believes has violated this Agreement necessitating the filing of a lawsuit or motion to enforce this Agreement or Permanent Injunction as described by Paragraph 4 above, [Plaintiff] shall provide written notice of such violations to [Defendants] giving [them] forty-eight (48) hours

---

[1] According to the settlement agreement, Defendants were to destroy all menus or brochures bearing the "Bread Basket" trademark. However, Defendants claim, and Plaintiff does not deny, that Plaintiff acquiesced in the use of existing menus and brochures provided the trademark was covered up.

5

> to cure same before enforcement shall be sought.  No further notice shall be required thereafter.

Plaintiff claims that he fulfilled this provision by providing notice of the Defendants' January 20, 2005 advertisement in the Jewish News, and that no further notice was necessary.  On the other hand, Defendants argue that the notice provision means that once the Court determines a violation has occurred, Plaintiff need not go through the notice and cure procedure to enforce repeated violations.

The Court does not find Defendants' explanation convincing.  The notice provision says nothing about requiring Plaintiff to go to court before no further notice is necessary.  On the other hand, the Court is not convinced Plaintiff has complied with the notice provision.  The provision is somewhat ambiguous, but does seem to contemplate an actual breach that would require cure.  In other words, Plaintiff cannot provide notice of an illusory breach, and then hold Defendants liable for a real breach, without giving Defendants notice and opportunity to cure regarding the real breach.  Otherwise, Plaintiff would be able to engage in the type of gamesmanship Defendants are concerned about.

In this case, the Court finds no bad faith on the part of Plaintiff.  However, since notice was only provided for the advertisement in the Jewish News, which the Court has determined to not constitute a violation, the notice provision was not properly complied with regarding the menu and personal rewards brochure.

With regards to the liquidated damages provision, Defendants argue that $50,000 for each violation of the injunction is unconscionable and unreasonable.  Under Michigan contract law, "[c]ourts will not permit parties to stipulate unreasonable sums as damages, and where such an attempt is made have held them penalties and therefore void and unenforceable."  *Curran v.*

*Williams*, 352 Mich. 278, 283; 89 N.W. 2d 602 (1958).

Plaintiff correctly notes that the cases cited by Defendants regarding the permissibility of liquidated damages do not refer to the terms of a court-ordered permanent injunction. However, Plaintiff is not correct in asserting that Defendants are subject to virtual strict liability for any breach of the permanent injunction. When considering an appropriate sanction for violation of an injunction, the court should consider the magnitude of the harm caused by the violation, and the deterrent effect of the sanction. *Glover*, 199 F.3d at 312. The Court notes that had the original licensing agreement with Forman remained intact, Defendants would now be paying around $12,000 a year for the use of the "Bread Basket" trademark. In addition, Plaintiff paid Forman $127,000 for the complete rights to the trademark. Given these amounts, the Court finds that an award of $100,000 would be an excessive sanction for the use of the trademark on a menu and a personal rewards brochure. This conclusion is bolstered by the Court's finding, discussed above, that Defendants were not given notice and opportunity to cure with regards to the menu and personal rewards brochure. In lieu of liquidated damages, the Court awards Plaintiff his costs and attorney's fees incurred in bringing this motion. Plaintiff may submit a request detailing the amount of costs and attorney's fees with appropriate support.

Furthermore, the Court recognizes the deterrence potential of the $50,000 liquidated damages provision. Plaintiff should not be required to continually appear in court to enforce his rights in the "Bread Basket" trademark. Therefore, the Court holds that from this moment on all notice requirements have been met, and the $50,000 liquidated damages provision will be strictly enforced for *all* violations of the injunction, including menus and personal reward brochures bearing the

trademark.[2]  Defendants will also be expected to take greater care in monitoring their advertising.

## V. CONCLUSION

For the above reasons, the Court HEREBY DENIES Plaintiff's Motion for Liquidated Damages.  The Court HEREBY GRANTS Plaintiff's Motion for Costs and Attorney's Fees.

IT IS SO ORDERED.

          s/Lawrence P. Zatkoff
          LAWRENCE P. ZATKOFF
          UNITED STATES DISTRICT JUDGE

Dated:  September 7, 2005

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 7, 2005.

          s/Marie E. Verlinde
          Case Manager
          (810) 984-3290

---

[2] The Court notes that in May 2004 Defendants indicated that it would take six months to exhaust current supplies bearing the "Bread Basket" trademark.  A year and four months have now passed, so by Defendants' timetable there should be no more supplies bearing the trademark.